■ ALPINE COURTS, INC., Respondent, v. MARTINA WIEDERMANN, Appellant. THEA R. SCHLEISSNER, Impleaded Defendant-Respondent.— In an action by the assignee of a vendee of real property to recover the down payment to the vendor, in which action the vendor counterclaimed against the assignee-plaintiff and the impleaded defendant for damages, the vendor-defendant appeals from a judgment of the Supreme Court, Queens County, entered June 19, 1969 after a nonjury trial, in favor of plaintiff and the impleaded defendant against the vendor-appellant. Judgment reversed, on the law and the facts, with costs to appellant against plaintiff; plaintiff's complaint dismissed; new trial granted upon appellant's counterclaim against both respondents; and counterclaim accordingly severed from plaintiff's action. In March, 1962, the impleaded defendant, Schleissner, sold her Queens County 14-room home and was required to vacate it by April 17. On April 26 she and defendant, Wiedermann, signed an agreement which provided for the sale to Schleissner of the real property and the tangible personal property therein owned and used by Wiedermann in the conduct of a motel business in Lake Placid, New

York. The sale was conditioned upon whether the State Liquor Authority (SLA) would approve the transfer of Wiedermann's liquor license to Schleissner or her assigneee. Schleissner made a down payment of $2,500 and law day, originally set for May 16, 1962, was thereafter adjourned pending SLA approval of the transfer of Wiedermann's license. The agreement's fifth paragraph provided: " The Purchaser shall be permitted to take possession of the premises subject to this sale on May 1, 1962 at which time the risk of fire or other loss shall be assumed by her." The agreement further provided: " The Seller represents and warrants that there is presently in force and effect a license for on-premises consumption of liquor at the demised premises and that the Seller will sign any and all papers in order to transfer the said license to the Purchaser or assigns. It is further understood and agreed that the transfer of the within premises and license are subject to and conditional upon approval of the State Liquor Authority and in the event the approval is not forthcoming, then this Agreement shall be null and void." On May 1 Schleissner assigned her rights under the agreement to plaintiff, a corporation wholly owned by her and of which she was the president. At about this time, Schleissner, exercising her right to possession under the agreement, moved into the motel with her children, distributing most of her furniture among rooms not occupied by her and causing Wiedermann to install partitions in Schleissner's motel apartment. By an advertisement in a religious center's bulletin, dated May 11, Schleissner advertised the motel, stating that she was its owner. Similarly, she prepared post cards advertising the motel and bearing her name as its owner. She purchased a three-year fire and general liability insurance policy in plaintiff's name covering the motel from May 1. Effective the same day, she obtained a workmen's compensation policy. Commencing June 6, the motel's electricity bill was charged by the utility to plaintiff. During the period of her possession Schleissner caused an oleomargarine and a health permit to be issued to plaintiff. On May 24, the Essex County Alcoholic Beverage Control Board received plaintiff's application for a hotel liquor license. Marked " Transfer ", the application was approved by the board on July 3. During her possession of the motel, Schleissner entered into its management, opened a joint checking account with Wiedermann in a Lake Placid bank in connection with the motel's operation, and opened a checking account for plaintiff in the same bank. Together with Wiedermann, Schleissner signed checks in payment of the motel's employees just as she had joined with Wiedermann in signing checks for the motel's other expenses. On July 17, 1962, Schleissner, without any explanation to Wiedermann, attempted to move all her property from the motel's rooms, refused to sign checks then due for the payment of the motel's employees, and, together with the children and the property in her apartment, left the motel after having been served individually and as plaintiff's president with summonses in an action by Wiedermann for breach of the April 26 agreement. Schleissner thereafter never communicated with Wiedermann. On July 23, Schleissner orally informed an SLA Deputy Commissioner that she was disappointed with the motel's business and wanted to withdraw plaintiff's application for the transfer to it of Wiedermann's liquor license and, in substance, she charged Wiedermann with availing (Alcoholic Beverage Control Law, § 111). By letter dated July 26, plaintiff's and Schleissner's attorney informed the same Deputy Commissioner that plaintiff was not withdrawing its application but that he thought the SLA should be informed of what, in substance, was a charge against Wiedermann of availing. By an affidavit dated July 26, Schleissner laid before the SLA allegations in support of such a charge. By letter dated September 25, Wiedermann informed the SLA that she did not intend to apply for a renewal

of her yearly license because her health required the closing of her business on October 31. She stated she would apply for a summer license in the spring of 1963. Consequently, Wiedermann's license was not renewed for the period beginning October 1, 1962. In February, 1963, after a revocation hearing had been held in December, 1962, an SLA hearing officer found that Schleissner had assisted Wiedermann in the motel's operation but that, at all times, Wiedermann had supervised her activities and had been in control of the licensed premises. In March, 1963, the SLA determined that the charge of availing had not been sustained and informed plaintiff that its application for a license had been disapproved because "there is no license in effect to be transferred." In our opinion, the Trial Term's holding that the April 26 agreement was impossible of performance because the SLA had failed to license plaintiff, and hence plaintiff was entitled to recover the down payment made by Schleissner, is erroneous. Schleissner's conduct on and subsequent to July 17 proved an anticipatory repudiation by plaintiff of the April 26 agreement. Though Wiedermann's decision against securing the renewal of her liquor license rendered impossible the performance of the agreement, that fact did not make the defense of impossibility accessible to plaintiff, for, plaintiff having repudiated the agreement, Wiedermann was not required to perform her implied promise to renew her license or to refrain from preventing the occurrence of an express condition. Plaintiff's anticipatory repudiation excused Wiedermann's tender of performance as well as all other conditions of their agreement. (See *Mignon* v. *Tuller Fabrics Corp.*, 1 A D 2d 174; 4 Corbin, Contracts, § 978; 11 Williston, Contracts [3d ed.], §§ 1304, 1317, 1334, 1337; 7 Encyclopedia, New York Law, Contracts [Simpson & Dusenberg], § 1610; Restatement, Contracts, § 320.) With respect to Wiedermann's counterclaim, a new trial is necessary because, among other reasons, the Trial Term improperly prevented Wiedermann from proving all the damages alleged by her and because no findings of damage were made by the Trial Term. Hopkins, Acting P. J., Munder, Martuscello, Latham and Brennan, JJ., concur.